996 So.2d 320 (2008)
Michael GARDNER, Plaintiff-Appellant
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Jeb Hamm, Defendants-Appellees.
No. 43,499-CA.
Court of Appeal of Louisiana, Second Circuit.
September 17, 2008.
*321 Street & Street by D. Randolph Street, Monroe, for Plaintiff-Appellant.
*322 Davenport, Files & Kelly by Mike C. Sanders, Michael J. Fontenot, Monroe, for Defendants-Appellees.
Before GASKINS, PEATROSS and DREW, JJ.
GASKINS, J.
The plaintiff, Michael Gardner, appeals from a trial court judgment which dismissed his claims arising from an auto collision. We affirm.

FACTS
On March 24, 2005, the plaintiff was traveling west on Washington Street in Monroe in his 2003 GMC Sierra truck; defendant Jeb Hamm was going north on North 4th Street in his 2004 Pontiac Grand Prix.[1] The vehicles collided at the intersection of Washington Street and North 4th Street, which is controlled by a traffic light. Contact between the vehicles occurred on the back rear passenger side of the Hamm car and the center to right side of the front of the Gardner truck.
On March 14, 2006, the plaintiff filed suit against Hamm and his insurer, State Farm Mutual Automobile Insurance Company. The plaintiff alleged that he had a green light and Hamm caused the collision by running a red light. He further alleged that he suffered injuries to his neck, left shoulder and left arm. The plaintiff also sought to recover for damage to his vehicle.
On June 1, 2006, the defendants answered, specifically pleading preemption of the intersection. They asserted that Hamm entered the intersection with a green light; however, a bus ahead of him stopped to make a left-hand turn. As soon as the bus turned, Hamm continued through the intersection. According to the defendants, the plaintiff then accelerated into the intersection, hitting Hamm.
On August 2, 2007, the parties stipulated that the damages in the case were less than the minimum required for jury trial and that a bench trial would be held.
The matter was tried on November 19, 2007. The plaintiff testified that he stopped at the intersection of North 4th Street and Washington Street for a red light; he was in the outside westbound lane and an SUV was in the inside lane next to him, blocking his view to his left. When the light changed to green, he waited for three or four seconds before going forward because a bus was sitting in the intersection; the bus then turned west on Washington Street. When he went forward, he collided with Hamm's car; he admitted that he had not seen the vehicle before impact.
The plaintiff also presented the testimony of his chiropractor and the Monroe police officer who wrote the accident report. Officer Brant Heath testified that he no longer recalled the accident and he relied solely upon his written report. He testified that he ticketed Hamm for a red light violation. The parties stipulated as to the testimony of the plaintiff's wife regarding his injuries.
Hamm testified that he was traveling behind a bus. After the bus entered the intersection on a green light, the bus driver activated his left-hand turn signal and stopped to let oncoming southbound traffic pass. At this point, as he waited for the bus to turn, Hamm's car was blocking the outside eastbound lane. He was not able to see the light from his position. He assumed that the light changed because *323 the eastbound cars seemed to release their brakes and began to "creep" forward. However, they and the car in the inside westbound lane, seeing his predicament, waited for him to clear the intersection. However, Gardner "[took] off." Attempting to avoid the collision with Gardner, Hamm testified that he turned his wheels as hard as he could, trying to get to the left. He contradicted Gardner's testimony that the car stopped next to Gardner was an SUV; he testified that it was either a 1985 or 1986 beige Caprice.
On November 20, 2007, the trial court ruled in favor of the defendants, finding that the plaintiff failed to carry his burden of proof showing that Hamm was at fault in causing the accident. The court specifically cited the plaintiff's own testimony that he just didn't see Hamm. Costs were assessed to the plaintiff.
The plaintiff appealed.

LAW

Manifest error
A court of appeal should not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State through Department of Transportation & Development, 617 So.2d 880 (La. 1993). The task of a reviewing court is to assess whether the fact-finder's resolution of a factual issue was reasonable in light of the record as a whole. Locke v. Young, 42,703 (La. App. 2d Cir.12/12/07), 973 So.2d 831. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Meneweather v. Shelter Insurance Company, 43,109 (La. App. 2d Cir.3/19/08), 978 So.2d 1243. When the findings by the trier of fact are based on credibility, respect must be given to the fact-finder's determination, for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on understanding and believing what is said. Meneweather, supra.

Preemption of Intersection
To be successful, a motorist claiming preemption of an intersection while crossing a favored roadway must show he entered at a time when he had reasonable opportunity to complete the crossing without endangering or impeding the passage of a vehicle on the superior roadway. Archer v. Hurst, XXXX-XXXX (La.App. 1st Cir.6/9/06), 938 So.2d 741.
In order to preempt an intersection, the motorist must show that he made a lawful entry, at a proper speed, after ascertaining that oncoming traffic was sufficiently removed to permit a safe passage and under the bona fide belief and expectation that he can negotiate a crossing with safety. He must show that he entered the intersection at a proper speed and sufficiently in advance of the vehicle on the intersecting street to permit him to cross without requiring an emergency stop by the other vehicle. Price v. City of Slidell, 1997-2066 (La.App. 1st Cir.9/25/98), 723 So.2d 455.
Although a motorist may have a green light, he still has a duty to allow vehicles already in the intersection when the light changes to traverse the intersection. Strong v. Farm Bureau Insurance Company, 32,414 (La.App. 2d *324 Cir.10/29/99), 743 So.2d 949, writ denied, XXXX-XXXX (La.2/4/00), 754 So.2d 229.

DISCUSSION
The plaintiff argues that the trial court's decision was either legally or manifestly erroneous. As to the contention of legal error, he claims that the trial court imposed upon him the burden of disproving that Hamm had preempted the intersection.
The position of Hamm's car prior to the accident is disputed. Gardner testified that he did not see the Hamm vehicle before the collision. However, he speculated that if Hamm was stopped behind the bus, he could not have already been in the intersection due to the size of the bus. On the other hand, Hamm testified positively that when the bus stopped to make its left-hand turn, his car blocked the outside eastbound lane with his front bumper just over into the inside eastbound lane.
The record is devoid of any measurements of the intersection or the bus that would assist the trier of fact in determining the exact location of the bus or Hamm's vehicle after their light turned red. Photos of the intersection were introduced which showed the four-lane Washington Street crossing the two-lane North 4th Street. Washington Street does not have a median between the lanes but is marked with a double yellow line. This is important because the lanes are closely configured, making vehicles caught in the intersection after a light change more easily seen by motorists stopped at the red light.
On direct examination, Gardner testified that he did not see the Hamm car prior to the accident. On cross-examination, he admitted that, since he did not see Hamm beforehand, he did not know how close to the bus he wasor even if Hamm had to stop because of the bus. Under questioning by the trial court, Gardner stated that when the light turned green for him, the bus was still in his way; as a result, he had to wait. Once the bus turned and got out of his way, he went forward because he had a green light. He assumed that due to the size of the bus, it had filled the intersection. He testified that he looked to the left but failed to see anything. Although he admitted that he could not see if Hamm was right behind the bus, he speculated that Hamm was not following the bus closely. When the judge asked him if Hamm was riding the tail of the bus, Gardner candidly responded, "I don't believe so, but you know I don't know because I didn't see him." Upon further questioning by the judge, he stated, "I just didn't see him."
During his testimony, Hamm stated that he entered the intersection behind the bus pursuant to a green light. However, he became unexpectedly trapped in the intersection due to the left-hand turn by the bus, which it did not signal before it moved forward. With the exception of the plaintiff, the motorists proceeding east and west observed his situation and waited for him to try to clear the intersection before driving forward.
Based upon our review of the record, we find no legal or manifest error by the trial court. Contrary to the plaintiff's assertion, the trial court did not require the plaintiff to disprove Hamm's claim of preemption of the intersection. The trial court considered all of the evidence presented at trial. It then concluded that the plaintiff, who admitted that he did not see the other vehicle before the accident even though he said he looked in that direction, failed to prove that Hamm acted in a negligent manner. In reaching this conclusion, the trial court was required to make factual and credibility determinations. *325 It is apparent that these matters, including the location of the Hamm car, were resolved in Hamm's favor.
Since we affirm the trial court's ruling on the issue of liability, we pretermit consideration of the plaintiff's assignments of error as to damages.

CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiff/appellant, Michael Gardner.
AFFIRMED.
NOTES
[1] The police report and the plaintiff's petition erroneously stated that the defendant's car was a Grand Am.