Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,233-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JOSEPH DAVIS                                    Plaintiff-Appellant

versus

CHRISTIE WHEELER AND                    Defendants-Appellees
STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2014-1448

Honorable Alvin R. Sharp, Judge

* * * * *

THE HAYES LAW FIRM, PLC              Counsel for Appellant
By: DaShawn P. Hayes

DAVENPORT, FILES & KELLY, L.L.P.   Counsel for Appellees
By: Carey B. Underwood

* * * * *

Before WILLIAMS, PITMAN, and THOMPSON, JJ.

**PITMAN, J**.

Plaintiff-Appellant Joseph Davis appeals the trial court's judgments in favor of Defendants-Appellees Christie Wheeler and State Farm Mutual Automobile Insurance Company ("State Farm"). For the following reasons, we affirm.

**FACTS**

On May 15, 2014, Davis filed a petition for damages against Wheeler and her insurer State Farm. He alleged that on May 16, 2013, he was operating a 2008 Ford truck owned by his employer and was stopped at a red light when a 2008 Toyota Prius owned and driven by Wheeler rear-ended his truck with "tremendous force." He contended that Wheeler caused the collision and caused severe injuries, expenses and damages to him.

On June 2, 2014, Defendants filed an answer. They admitted that a "very minor" traffic collision occurred on May 16, 2013, and that the collision was caused by the fault of Wheeler. They denied the remaining allegations, including that Davis was injured in the collision. On June 24, 2014, they filed a stipulation admitting that Wheeler was at fault for the collision, but noted that they were in no way admitting causation of any bodily injury to Davis.

On August 10, 2015, Davis filed a motion in limine seeking to prohibit evidence of prior accidents and of force of impact. He also filed a motion to strike Richard Baratta, Ph.D., as a witness for the defense regarding force-of-impact evidence. He contended that Dr. Baratta was not qualified to provide expert opinions regarding medical causation because he was not a medical doctor, but, instead, had a Ph.D. in engineering.

On September 2, 2015, Defendants filed an opposition to Davis's motion in limine. They argued that evidence of prior accidents is admissible in a personal injury case. They contended that evidence of force of impact is relevant in cases regarding disputed injuries. They also filed an opposition to Davis's motion to strike. They contended that the sole issue in this case was whether the "small bump" of the collision caused any injury to Davis and that they hired Dr. Baratta to rebut the testimony of Davis's expert.

A hearing on the motion in limine and motion to strike was held on September 8, 2015; and, on September 28, 2015, the trial court filed a judgment. It granted the motion in limine to prohibit any reference to two prior accidents of August 2012 and January 2013. It granted the motion to strike to the limited extent that Dr. Baratta was ordered not to testify as to any issues relating to the medical causation of Davis's injuries.

On October 5, 2015, Defendants filed a notice of intent to apply for supervisory writs for review of the trial court's judgment on the motion in limine and the motion to strike. On January 28, 2016, this court denied the writ as to the motion in limine regarding prior-accident evidence. Noting that force-of-impact testimony is a relevant factor in low-impact collision cases, this court granted the writ as to the motion to strike and remanded the matter to the trial court for a hearing to determine which portions of Dr. Baratta's opinions and conclusions were admissible.

On October 10, 2017, Davis filed a motion in limine, requesting that the court exclude testimony and evidence concerning liability of the collision, including, but not limited to, testimony and evidence concerning force of impact. Defendants filed an opposition to this motion.

On October 11, 2017, a *Daubert* hearing was held at which Dr. Baratta testified. On October 18, 2017, the trial court filed a judgment that Dr. Baratta was qualified to render opinions in the field of biomechanics and accident reconstruction. It stated that Dr. Baratta was not allowed to give any opinions or testimony regarding medical causation.

On January 10, 2018, State Farm filed a motion for rehearing on the prior ruling on the motion in limine concerning prior-accident evidence. On January 30, 2018, Davis filed an opposition to State Farm's motion and argued that this issue was barred by res judicata and the law of the case.

On February 5, 2018, a hearing was held on the motions in limine.[1] On February 20, 2018, the trial court filed a judgment. It denied Davis's motion in limine regarding force-of-impact evidence. It granted in part and denied in part State Farm's motion for rehearing and stated that Defendants would be allowed to present evidence of Davis's January 2013 automobile accident but not of his 2012 automobile accident.

Jury selection began on March 19, 2018, and the jury trial began on March 21, 2018.[2]

Dr. Arnold Harris, a chiropractor, testified that he treated Davis for his complaints of neck pain that radiated to the right upper extremity, headaches, mid-back pain and lower-back pain that radiated to the left and right lower extremities. Davis told him that the onset of his injuries was a

---

[1] On February 12, 2018, Davis filed a notice of intent to apply for a supervisory writ to review the trial court's February 5, 2018 judgment regarding the motions in limine. On March 14, 2018, this court did not consider the writ because the application lacked documentation of the ruling for which he sought review.

[2] On March 23, 2018, Defendants filed a peremptory exception of no cause and/or right of action. They moved that the action against Wheeler be dismissed because she was deceased. They stated that the proper party is the succession representative.

May 16, 2013 automobile collision. He first saw Davis on May 20, 2013. His initial diagnosis of Davis was cervical sprain/strain, cervical radiculitis, headaches, lumbar sprain/strain, lumbar radiculitis, stiffness, restricted ranges of motion in the lumbar spine, thoracic sprain/strain and deep spasms throughout the spine. He suggested a treatment plan of chiropractic manipulation and scheduled two visits per week with Davis for the next 12 to 16 weeks. On subsequent visits, Davis stated that he was still in pain. On September 6, 2013, he referred Davis for an MRI of the cervical and lumbar spine. He reviewed the MRI results with Davis, which showed some disc pathology and foraminal stenosis, and referred him to Dr. Kenneth Vogel, a neurosurgeon. He testified that it was his professional opinion that it is more likely than not that the injury sustained by Davis was caused by the May 16, 2013 collision.

In a video deposition, Dr. Vogel testified that he first evaluated Davis on September 20, 2013, for cervical and bilateral arm pain and lumbosacral and bilateral leg pain. He noted that Davis reported having been in good health until the May 16, 2013 collision when he "was thrown about and dazed momentarily and noted immediate cervical and lumbar pain." Davis denied prior injuries, but did note another automobile accident in 2012 or 2013. He detailed his evaluation of Davis, found abnormalities in his neck and lower back and diagnosed him with a Grade 1 concussion. He testified that "in all medical probability, the signs and symptoms are causally related" to the May 16, 2013 collision. On November 11, 2013, Davis had a lumbar discogram CAT scan, which showed that a disc herniation at L4-L5 was causing his lower-back pain. Dr. Vogel then performed a microsurgical discectomy, a laminectomy and a lumbar epidural block on Davis. Six

weeks after surgery, Davis still complained of lower-back pain, so he ordered physical therapy. He opined that a traumatic event, such as a rear-end collision, could cause a disc to herniate.

Dr. Vincent Forte, who is board-certified in anesthesiology and pain medicine, testified that Davis first presented to him on July 24, 2014, with the chief complaint of lower back pain. Following a physical examination, he opined that Davis possibly had post-laminectomy syndrome, i.e., lower-back pain following his lumbar surgery. Based on MRIs taken before and after Davis's November 2013 surgery, he recommended a diagnostic nerve block and performed two procedures on Davis in August 2014. In October 2014, Davis stated that he was pleased with the nerve block injections, but that he continued to have lumbar pain. When Davis's attorney asked Dr. Forte if the May 16, 2013 collision caused Davis's pain and injury, Dr. Forte responded that based on Davis's medical history from Dr. Vogel and the history that Davis provided to him, the pain symptoms did not start until after the accident. On cross-examination, Dr. Forte stated that without relying on Dr. Vogel, he could not say that it was more likely than not that his treatment of Davis was caused by the May 16, 2013 collision.

Davis testified that at the time of the collision, he worked for O'Reilly Auto Parts delivering parts between stores. He stated that on May 16, 2013, he was in his company truck and stopped at a traffic light when he heard a loud bang and temporarily blacked out. When he came to, he discovered that his truck had been rear-ended by Wheeler. He stated that he immediately felt pain in his neck, lower back and lower extremities and described the pain in his lower back as "extreme." He finished the work day and worked through the pain. Noting that he did not have health coverage,

he stated that the day after the collision, he called an attorney, who recommended that he see Dr. Harris. After several months of treatment with Dr. Harris, his pain was not relieved and was aggravated by physical movement. He then met with Dr. Vogel and had surgery. He stated that he still felt sharp pains eight months after surgery and was not able to return to work until over a year after surgery. He described the negative effects that the surgery and pain medicine had on his life. He underwent six weeks of physical therapy and then went to Dr. Forte for pain management. The injections he received from Dr. Forte provided him with relief for a short period of time. He stated that at the time of trial he still had pain from time to time.

Davis further testified that in January 2013, he was involved in a one-car accident when he hit a concrete block at a carwash. He stated that his neck and lower back bothered him for a few days after the accident, but he never saw a doctor or made an insurance claim for any injuries sustained. He did not recall telling Dr. Harris, Dr. Vogel or Dr. Forte about the January 2013 accident.

Davis rested his case in chief, and the defense presented its witnesses.

In Wheeler's deposition, she testified that on May 16, 2013, she was stopped at a red traffic light in her Toyota Prius behind Davis's truck. She was looking down when she saw the car next to her move forward, so she began to move her car forward at a speed of no more than "one or two miles an hour." Her car then rear-ended Davis's truck. She put her car in park, got out of her car and walked to Davis's door to ask if he was okay. He responded that he was okay, but was "just a little shook up." She then called the police department, and she and Davis moved their automobiles to a

6

parking lot. Wheeler stated that her Prius did not sustain any damage in the collision. She noted that the bumper of Davis's truck was pushed down prior to the impact of the collision.

David Vandergracht, an independent automobile appraiser, testified that on December 18, 2012, he inspected a Ford Ranger truck at O'Reilly Auto Parts. He noted that the bumper of this truck was pushed downward toward the ground. The license plate number and the vehicle identification number of the truck inspected by Vandergracht matched that of the truck involved in the May 16, 2013 collision.

Dr. Baratta, an expert in the field of biomechanical engineering and accident reconstruction, testified that he reviewed the May 16, 2013 collision, which included an inspection of Wheeler's Prius. The only damage he noted on the Prius's bumper was a small, thin horizontal line in the paint. He noted that there was no damage to the Prius's Styrofoam front bumper absorber, meaning that there was not sufficient contact force to deform it. He stated that the contact force would not have been sufficient to break the friction between Davis's truck's tires and the ground, i.e., that the body of the truck would rock forward and back, but the wheels would not move. When asked by defense counsel if any occupant in Davis's truck should have been injured as a result of the "bump" of the collision, Dr. Baratta responded, "You would not expect that a person that undergoes those dynamics would have any injuries." He stated that he had no opinion as to whether Davis sustained an injury in the collision.

The defense rested, and Davis presented his rebuttal. Dr. David J. Barczyk, an expert in chiropractic care and crash biomechanics, testified that he conducted a biomechanical evaluation of Davis, which included

reviewing his medical history. He also considered the energy transfer between the automobiles involved in the May 16, 2013 collision and the condition of the automobiles after the collision. Dr. Barczyk stated that it was his opinion that Davis was injured in the collision.

On March 23, 2018, the jury found that Davis had not proved by a preponderance of the evidence that he sustained injuries that were caused by the collision of May 16, 2013. On April 3, 2018, the trial court signed a judgment in favor of Wheeler and State Farm, dismissing all of Davis's claims with prejudice.

On April 27, 2018, Davis filed a motion for new trial. He argued that the verdict was contrary to the law and evidence and explained that it was illogical for the jury to find that his injuries were not caused by the collision as there was sufficient medical evidence to prove the same. He contended that to receive no compensation for his injuries was infuriating and to suggest that he suffered no pain, hardship or inconvenience was egregious.

On June 26, 2018, State Farm filed an opposition to the motion for new trial and argued that the jury's verdict was well grounded on facts and the law.

On July 30, 2018, a hearing was held on the motion for new trial. On August 27, 2018, the trial court filed a ruling denying the motion. It noted that no peremptory grounds existed for the granting of a new trial and that no basis existed for exercising its discretion to grant a new trial.

Davis appeals the trial court's April 3 and August 27, 2018 judgments.

## DISCUSSION

### *Motion for Rehearing*

In his first assignment of error, Davis argues that the trial court erroneously granted Defendants' motion for rehearing on the prior ruling on the motion in limine concerning prior-accident evidence when this court denied a writ on the matter and Defendants failed to raise any new issues for consideration by the trial court. In the alternative, Davis maintains that the evidence of his prior accidents was prejudicial and irrelevant.

State Farm argues that the trial court properly reconsidered the prior ruling and allowed the admission of evidence concerning Davis's accident that occurred four months prior to the collision at issue. It contends that the prior ruling on the motion in limine was an interlocutory judgment that could be reconsidered or revised by the trial court prior to trial.

A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment. La. C.C.P. art. 1841. A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. *Heller v. Nobel Ins. Grp.*, 00-0261 (La. 2/2/00), 753 So. 2d 841; *Taylor v. Dowling Gosslee & Assocs., Inc.*, 44,654 (La. App. 2 Cir. 10/7/09), 22 So. 3d 246, *writ denied*, 09-2420 (La. 2/5/10), 27 So. 3d 299. It is well-settled that prior to final judgment, a trial court may change the result of interlocutory rulings it finds to be erroneous. *VaSalle v. Wal-Mart Stores, Inc.*, 01-0462 (La. 11/28/01), 801 So. 2d 331.

Except as otherwise provided by law, all relevant evidence is admissible. La. C.E. art. 402. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

without the evidence. La. C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay or waste of time. La. C.E. art. 403. Evidence of prior injury and claims is admissible insofar as it bears on any issue before the court. *Pratt v. Culpepper*, 49,627 (La. App. 2 Cir. 2/27/15), 162 So. 3d 616. The trial court has great discretion in determining the relevancy and probative value of evidence and in striking the balance between relevancy and prejudicial effect, and its determinations will not be overturned absent a finding of a clear abuse of discretion. *Williams v. Bd. of Sup'rs of Univ. of La. Sys.*, 48,763 (La. App. 2 Cir. 2/26/14), 135 So. 3d 804, *writ denied*, 14-0666 (La. 5/2/14), 138 So. 3d 1249.

In this case, the trial court's first ruling on the motion in limine was an interlocutory judgment. When this court denied supervisory writs on the issue of prior-accident evidence, the judgment remained an interlocutory judgment that could be reconsidered rather than became a final judgment that could not be modified. *See Tolis v. Bd. of Sup'rs of La. State Univ.*, 95-1529 (La. 10/16/95), 660 So. 2d 1206. Therefore, the trial court had the authority to reconsider the judgment.[3]

Davis placed his history of prior injuries and accidents at issue by claiming personal injury damages. The trial court weighed the probative value of the prior-accident evidence against the danger of its prejudicial effect in conformity with La. C.E. art. 403. Noting the proximity of Davis's

---

[3] We note that in the motion for rehearing, State Farm incorrectly stated that this court "refused to hear the issue" of prior-accident evidence when, in fact, this court denied the writ regarding prior-accident evidence "on the showing made."

10

prior accidents to the May 2013 collision, it determined that only the January 2013 accident was admissible. Therefore, the trial court did not abuse its discretion when it determined that the evidence of Davis's prior accident in January 2013 was relevant and admissible pursuant to La. C.E. art. 403.

Accordingly, this assignment of error lacks merit.

*Jury's Verdict*

In his second assignment of error, Davis argues that the jury erroneously rendered a verdict that he did not prove by a preponderance of evidence that he sustained injuries that were caused by the collision. He contends that all of his treating physicians causally related his injuries to the collision, that he presented expert testimony of an engineer who opined that his injuries occurred from the collision and that Defendants did not present any medical evidence or testimony to controvert the findings of his treating physicians. He states that he proved by a preponderance of the evidence that his injuries were caused by the collision and that it is inconceivable, illogical, irrational and egregious for the jury to find otherwise when there was sufficient medical evidence to prove causation.

State Farm argues that the jury properly considered the testimony and credibility of the witnesses and evidence and acted appropriately in rejecting the testimony of the healthcare providers and Dr. Barczyk.

In a personal injury lawsuit, the plaintiff has the burden of proving by a preponderance of the evidence a causal connection between the accident and injuries. *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 (La. 2/20/95), 650 So. 2d 757; *Swayze v. State Farm Mut. Auto. Ins. Co.*, 49,079 (La. App. 2 Cir. 10/21/15), 184 So. 3d 81. The plaintiff satisfies this burden by proving through medical and lay testimony that it was more probable

11

than not that the injury was caused by the accident. *Maranto v. Goodyear Tire & Rubber Co.*, *supra*; *Swayze v. State Farm Mut. Auto. Ins. Co.*, *supra*. The plaintiff is aided in his burden of proving causation by the presumption described in *Housley v. Cerise*, 579 So. 2d 973 (La. 1991), in which the Louisiana Supreme Court stated:

> [a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.

*Id.*, quoting *Lucas v. Ins. Co. of N. Am.*, 342 So. 2d 591 (La. 1977).

Whether an accident caused a person's injuries is a question of fact, and an appellate court may not set aside a finding of fact made by a judge or jury in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989); *Mulreany v. Williams*, 41,569 (La. App. 2 Cir. 12/13/06), 945 So. 2d 291.

When the findings by the trier of fact are based on credibility, respect must be given to the fact finder's determination, for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on understanding and believing what is said. *Meneweather v. Shelter Ins. Co.*, 43,109 (La. App. 2 Cir. 3/19/08), 978 So. 2d 1243.

In the case *sub judice*, Davis had the burden of proving by a preponderance of the evidence a causal connection between the May 16, 2013 collision and his injuries. Davis does not benefit from the *Housley* presumption because he did not show (1) that he was in good health prior to the accident at issue; (2) that subsequent to the accident, symptoms of the alleged injury appeared and continuously manifested themselves afterward;

12

and (3) through evidence, either medical, circumstantial or common knowledge, a reasonable possibility of causation between the accident and the claimed injury. *Byrnside v. Hutto*, 47,685 (La. App. 2 Cir. 2/27/13), 110 So. 3d 603. As the burden of proof was on Davis, Defendants did not have to present any evidence to controvert his witnesses and evidence.

The jury had the ability to accept or reject the testimony of Davis and his experts, and it clearly rejected Davis's theory of causation and the medical history he provided to his experts. Respect must be given to the jury's credibility determinations. Further, the jury was not manifestly erroneous or clearly wrong in its rejection of Davis's theory of causation.

Accordingly, this assignment of error lacks merit.

*Motion for New Trial*

In his third assignment of error, Davis argues that the trial court erroneously denied his motion for new trial. He states that the jury failed to award any damages even though a plethora of medical evidence and testimony was presented to illustrate that it was more probable than not that his injuries were caused by the subject collision.

State Farm argues that the trial court did not abuse its discretion in denying Davis's motion for new trial. It contends that the jury's verdict was not clearly contrary to the law and evidence, did not result in a miscarriage of justice and was supported by a fair interpretation of the evidence.

La. C.C.P. art. 1972 sets forth the peremptory grounds for granting a motion for new trial and states:

> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.

13

> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
> (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

La. C.C.P. art. 1973 sets forth the discretionary grounds for granting a motion for new trial: "A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." Although a trial judge has much discretion in determining if a new trial is warranted, an appellate court may set aside the ruling of the trial judge in a case of manifest abuse of that discretion. *Hickman v. Wm. Wrigley, Jr. Co., Inc.*, 33,896 (La. App. 2 Cir. 10/4/00), 768 So. 2d 812.

For the same reasons the jury did not err in its verdict, the trial court did not err in denying the motion for new trial. The verdict was not clearly contrary to the law and the evidence, and the trial court did not abuse its discretion when determining that a discretionary ground was not present to warrant a new trial.

Accordingly, this assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgments in favor of Defendants-Appellees Christie Wheeler and State Farm Mutual Automobile Insurance Company and against Plaintiff-Appellant Joseph Davis. Costs of appeal are assessed to Plaintiff-Appellant Joseph Davis.

**AFFIRMED.**

14